**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Crim. No. 07- 333(HHK)** |
| **v.** | |
| **ANITA BEALLE** | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Anita Bealle, through undersigned counsel, respectfully submits her Memorandum in Aid of Sentencing.

**Procedural History**

Ms. Bealle is before the Court pending sentencing after she entered a guilty plea on February 29, 2008. Ms. Bealle pled guilty to count two of the indictment which charged her with Unlawful Maintenance of a Premise to Manufacture , Distribute, Store and Use a Controlled Substance in violation of 21 U.S.C. § 856(a)(2). Ms. Bealle committed the charged offense on November 2, 2007. Pursuant to the conviction Ms. Bealle faces a maximum prison term of twenty years, Supervised Release of not more than three years and a fine of $500,000. Probation Officer Crystal Lustig has calculated a sentencing range of 24 to 30 months of incarceration pursuant to the advisory United States Sentencing Guidelines. The range results from a Base Offense Level 17 and a Criminal History Category I. (PSR ¶ 45).

**ARGUMENT IN SUPPORT FOR A SENTENCE OF PROBATION**

Ms. Bealle is before the Court facing her first criminal conviction. Sadly, she will be sentenced and labeled a convicted felon at the age of 47. In fact, prior to the instant offense Ms.

Bealle had never been charged with a criminal offense or even placed under arrest. The instant offense is anomalous in an otherwise exemplary life of responsible citizenship, intermittent employment and devotion and caring for her family, particularly for her disabled mother. Her appearance in a sentencing hearing will be an errant departure from the principles and values that she has followed throughout her life and which she has imparted on her children.

In her brief interaction with the criminal justice system Ms. Bealle has been through a previously unimaginable experience. At her initial appearance on November 5, 2007 Magistrate Judge Kay granted the government's request for temporary detention. Ms. Bealle's one month confinement at the District of Columbia Jail and Central Treatment Facility was a sobering experience. Wearing an orange jumper and housed with violent individuals, drug dealers and prostitutes was something that she had never contemplated. Having never set a foot in a prison, Mr. Bealle found herself bewildered and scared.

Her fear was compounded and accompanied by the humiliation of being processed through the criminal justice system. As the sentencing date approaches her trepidation has increased. She knows that the court can sentenced her to a prison term that could extend until she is fifty years old. Instead of enjoying her middle years, Ms. Bealle is bracing herself for the consequences of her poor judgement in letting a young drug dealer take advantage of her generosity. By all means this is a very disconcerting and sad prospect for someone who stands to be convicted for the first time.

While Ms. Bealle must be held accountable for her illegal conduct, her character, the facts of the criminal conduct, and her resolve make it extremely unlikely that she will re-engage in future criminal conduct. Recidivism is unlikely for a number of reasons. First, Ms. Bealle has

led a completely crime free and family oriented life. An important gauge of her capacity and commitment to conduct herself responsibly is her compliance with this Court's and Judge Kay's orders during the pendency of the case.

Since she was transferred to the Fairview Community Correction Center on December 4, 2007, Ms. Bealle has not incurred a single infraction. In the meantime she enthusiastically pursued every educational and vocational training referral and opportunity that was made available to her. Thus, instead of procrastinating and sitting around her apartment, Ms. Bealle finally showed a resolve and commitment to better herself. This honest and sustained transformation has resulted in fundamental changes in her life. To her credit completely embraced the opportunity the Court provided in placing her in a halfway house with education and vocational privileges.

## I. PURSUANT TO UNITED STATES v. BOOKER , 18 U.S.C. § 3553(a), 18 U.S.C. § 3582, 18 U.S.C. § 3562 AND 28 U.S.C. § 991(b)(1)(B) THE COURT HAS AUTHORITY TO SENTENCE MS. BEALLE TO A TERM OF PROBATION

In United States v. Booker, the Supreme Court held that the mandatory sentencing guidelines were unconstitutional as applied. 125 S. Ct. 738 (2005) The Court further held that judges are required to "take account of the Guidelines together with other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added). The Court is not bound by the guideline range and there is no requirement that a sentence be within the guideline range. The guideline range is just one factor to be considered along with the mandatory statutory factors delineated in 18 U.S.C. § 3553(a).

Those factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the

needed educational or vocational training, and pertinent policy statements issued by the sentencing commission, and the need to avoid unwarranted sentencing disparities among similarly situated defendants. U.S. v. Clifton Price 409 F.3d 436, 442 (D.C. Cir. 2005) Moreover, Sentencing Courts have a continuing duty to "[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005).

The government is correct in noting that the guidelines is "the starting point and initial benchmark" in sentencing determinations. Gov. Sent. Mem at 2. (citing Gall v. United States, 128 S. Ct. 586, 596 (2007))  However, the following sentences in the opinion state that the "Guidelines are not the only consideration," and the court, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate," "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Id. The Court "must make an individualized assessment based on the facts presented," and "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id. at 597.  If the Court decides on an outside-guideline sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id.

The primary purpose of the sentencing statute, 18 U.S.C. 3553(a), is for the sentencing court to impose a sufficient sentence, but not one that is greater than necessary.  In Kimbrough v. United States, 128 S.Ct. 558 (2007), the Supreme Court spoke directly to this issue in holding that, in light of Booker, a district court may deviate from the advisory Guidelines range for crack cocaine offenses based on a conclusion that the disparity between ranges for crack and powder cocaine results in a sentence greater than necessary to achieve the sentencing goals of § 3553(a).

Id. at 564.

18 U.S.C. § 3553(a) allows the Court to take into account the particularized factors of Ms. Bealle's life and not just the fact of her criminal conduct. This approach is consistent with the objectives of 28 U.S.C. § 991, the enabling statute of the Sentencing Commission. Both the enabling statute and the sentencing statue contemplate a flexible and particularized approach to sentencing determinations. 28 U.S.C. § 991(b)(1)(B) provides Sentencing Courts with discretion to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." Application of 18 U.S.C. § 3553(a) and 28 U.S.C. § 991(b)(1)(B) justify the imposition of a sentence of probation for a period of five years.

**A. The Nature and Circumstances of the Offense**

18 U.S.C. § 3553(a)(1) directs the Court to look at the nature and circumstance of the offense and Ms. Bealle's history. Ms. Bealle's criminal conduct took place during a relatively short time frame in late October and early November in 2007. The details of her criminal conduct are summarized in the PSR see ¶ 6-8. There is no evidence to even suggest that Ms. Bealle engaged in direct sales of illegal drugs from her apartment. Similarly, it is undisputed that Ms. Bealle was not responsible for bringing and maintaining the illegal drugs and paraphernalia in her apartment. Ms. Bealle became the unwitting facilitator for a young drug dealer who initially concealed his intentions when he sought permission to use the bathroom in her apartment. At some point thereafter he asked permission to periodically stay and rest in her apartment. Clearly, Ms. Bealle used poor judgement in allowing someone into her apartment and to use it with greater frequency. Instead of trying to kick the person out, Ms. Bealle turned a

blind but apprehensive eye to what was happening inside of her apartment.

Although, Ms. Bealle's apartment became the illegal sanctuary for the drug dealer to conduct his business, she did not receive any benefit in allowing the illegal conduct.  On the contrary, the drug dealer intended to establish himself in her apartment while keeping all the profits from his illegal business.  Her limited and unwitting role is supported by the fact that Ms. Bealle had nothing of significant value when her apartment was searched. At the time of her arrest Ms. Bealle did not own a car, or any jewelry or home furnishings worth mentioning.

Not surprisingly, it was her emotional vulnerability, naivete and past history with crack cocaine that the drug dealer accurately gauged and manipulated.  In Ms. Bealle and her apartment, the drug dealer found the perfect place to conduct his business.  Equally important was that Ms. Bealle did not present a physical or financial threat to the drug dealer.  Her inability to defend herself and disinterest in either crack cocaine or the proceeds, meant that the drug dealer could reap the full profits of his illegal business.  Since, Ms. Bealle neither demanded or negotiated any percentage of the drug dealer's profits, she gained absolutely nothing by putting herself in a legal predicament.  Finally, the drug dealer's irregular use of Ms. Bealle's apartment meant that he was safely ensconced beyond the surveillance and search that snared Ms. Bealle.

After she was arrested, Ms. Bealle never thought that she would end up prosecuted in Federal District Court.  She also never thought that her criminal conduct could result in long term incarceration.  However, she soon realized the gravity of her situation when she was ordered detained.  For a 47-year-old who had never set a foot in a prison, Ms. Bealle was shocked by the dramatic turn in her life.  Needless to say, detention in the DC Jail made an immediate impression on Ms. Bealle.  During those first few days of incarceration she absorbed the impact

of her poor judgement in ignoring what was taking place in her apartment. Without a doubt her willful ignorance had completely devastated her life. To her credit and as proof of her resolve, Ms. Bealle made a commitment to turn away from drugs, to seek honest employment and to become a law abiding person.

**B. History and Characteristics of Ms. Bealle**

Ms. Bealle is a motivated, capable and exceptionally caring person. Unfortunately, Ms. Bealle has never fulfilled her potential in becoming a productive member of the community. As outlined in the PSR, Ms. Bealle has a very sporadic and limited employment history. At the time of her arrest she was unemployed. Ms. Bealle started turning the page in her life when Magistrate Judge Kay placed her in a halfway house with educational and vocational training privileges. Once the halfway house approved her for training passes, Ms. Bealle began attending the Perry School Community Service Center for vocational training. From the moment she began attending classes, Ms. Bealle demonstrated a commitment to overcome the malaise that had been a hallmark during her adult life.

Ms. Bealle's desire and goal of being a productive person has taken place during the pendency of her criminal case. During her residency at the Fairview Community Correction, Ms. Bealle has learned how to be an independent and positive thinking person. Ms. Bealle accomplished this by successfully attending and completing classes in Job Readiness training and Computer training. Participation in these programs have instilled in Ms. Bealle a new found motivation, enthusiasm and purpose for employment that she had never known. The PSR accurately describes Ms. Bealle as being a "reliable, consistent, and dependable" student. In describing her classes, Ms. Bealle beams in talking about the subjects that she is learning and

mastering at the Perry School Community Service Center.

At age 47 Ms. Bealle has found a purpose in life that had been previously missing. Attending school with the goal of earning honest money, working with professional and law abiding people has provided Ms. Bealle with a respect and appreciation for life that she never had. For the first time in her life, Ms. Bealle feels pride in her humble but productive accomplishments. Her academic success has been contingent on her sustained sobriety. At the sentencing hearing, the Court will see an Anita Bealle that is unrecognizable from the person who let a young criminal deal drugs out of her apartment.

### C. The Sentence Should Reflect the Seriousness of the Offense

Ms. Bealle recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. While the sentence must provide deterrence and protect the public, it must also provide Ms. Bealle with educational and vocational training and medical care. In balancing all of the purposes of sentencing, the Court must also impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2)[§ 3553]." See 18 U.S.C. § 3553(a).

Ms. Bealle has acknowledged the seriousness of her criminal conduct and has readily taken responsibility for her actions. When the police confronted her with the drug sales that were taking place inside of her apartment, Ms. Bealle immediately her culpability. In the first meeting with undersigned counsel, Ms. Bealle expressed her desire to resolve the case by admitting her guilt and accepting the consequences. In light of her resolve to transform her life and her efforts in making amends for her wrongdoing, a guideline sentence of incarceration would be "greater than necessary."

Long term incarceration will make it very difficult for Ms. Bealle to obtain future employment. Ms. Bealle's recent accomplishments at the Perry School have become solid foundations that cannot be underestimated in her journey toward permanent sobriety and financial independence. A sentence that places Ms. Bealle on community supervision and restricts her to home confinement would be more than adequate to meet the sentencing purposes set forth in 18 U.S.C. § 3553(2)(a). The felony conviction on its own will have employment and voting consequences for the rest of her life. Probation will require a sustained commitment to responsible behavior.

Probation will subject Ms. Bealle to a strict supervision regimen which will include reporting to a probation officer, submitting monthly financial reports, and mandatory drug testing. Furthermore, she will be required to report any change in her residence, or employment outside of the metropolitan area. All of these factors will weigh heavy in her everyday life. It is safe to assume that recidivism for Ms. Bealle is unlikely and the requirements of Probation should adequately protect the public. Seen in this light, long term incarceration would result in a sentence that is "greater than necessary."

Finally, the seriousness of the offense has to take into account and result in a sentence that "promote[s] respect for the Law and provide[s] just punishment." A sentence of probation for the maximum term of five years can be "just punishment" when the Court considers and takes into account 18 U.S.C.§3582. In pertinent part 18 U.S.C. § 3582 (a) states:

"The Court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added)

**D.      The Sentence Should Afford Adequate Deterrence to Criminal Conduct**

A sentence of long term probation can adequately protect the public and achieve adequate deterrence for the following reasons.  First, Ms. Bealle is a first time offender who throughout her life has never exhibited violent or antisocial behavior.  The charged criminal conduct encompasses a limited period during the months of October and November 2007.  The facts of the case show that Ms. Bealle had very little input and benefit in the criminal conduct that was directed and orchestrated by the young drug dealer who used her apartment.  Finally,  Ms. Bealle's history of substance abuse has been infrequent and does not suggest any long term need or in-patient treatment.

**E.      The sentence should provide the most effective rehabilitation treatment**

A sentence of probation would most effectively support Ms. Bealle's rehabilitation.  If placed on probation Ms. Bealle can continue the progress she has thus far demonstrated in completing and graduating from the training programs at the Perry School[1].  Any period of incarceration will undermine the post offense rehabilitation that has already taken place, and will delay her entry into the work force. While Ms. Bealle's recent rehabilitation efforts are commendable, permanent recovery will require a long term commitment.  In that effort she will need the assistance and guidance of professionals.  The probation office is best equipped to direct and assess her overall progress while on superviison. Long term incarceration, on the other hand, could have a negative effect and undermined the progress that Ms. Bealle has made to this point.

Undersigned Counsel's request on behalf of Mr. Bealle is admittedly extraordinary.  The

---

[1]     Counsel has attached three certificates, Exhibits A,B and C, to the memorandum that have been awarded to Ms. Bealle.

request is premised on Ms. Bealle's encouraging efforts in pulling herself out of the criminal predicament that she placed herself in. Thus far, Ms. Bealle has demonstrated a genuine commitment to live a law abiding life and to stay clear of the drug dealers who took advantage of her. By imposing a probation sentence of five years, Ms. Bealle will always be reminded of the consequences of going back to her old ways. Probation means the Court will continue to have jurisdiction and authority to incarcerate Ms. Bealle. The threat of incarceration at the D.C. Jail or at a federal penitentiary will certainly have a preclusive effect since it's a real and tangible consequence that Ms. Bealle does not want to re-visit.

**CONCLUSION**

Ms. Bealle is a decent and well meaning woman who made a series of terrible decisions in allowing a young and dangerous drug dealer into her apartment to carry out his illegal business. Prior to the instant offense Ms. Bealle had never been incarcerated in her life. Since she was arrested Ms. Bealle has been through a life altering and sobering experience. Ms. Bealle wants the opportunity to demonstrate that she can lead an exemplary life that is characterized by honesty, hard work and responsibility to her family and community. Mr. Beall is ready to take on the challenge and prove to the Court and the government that she has learned her lesson. For these reasons undersigned counsel requests that the Court sentence Ms. Bealle to a term of probation of five years.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

/s/

Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

# EXHIBIT

# A



# Perry School, Inc.
# Certificate of Excellence

*This Certifies That*

## Anita Bealle

*Has Been Selected to Receive This Certificate*
*In Recognition of*
*Completing Job Readiness Training*

*Granted: January 25th, 2008*

*Signature* H. Wendell Chesson

# EXHIBIT

# B



CERTIFICATE OF APPRECIATION
AWARDED TO
Anita Beale
Thank You For Volunteering Your Services
To Help Make The Job Fair On March 12, 2008 A Success
For Perry School Community Services Center

# EXHIBIT

# C

Apr 25 08 12:54p Perry School 202-216-0785 p.3

PERRY SCHOOL NETWORKED LEARNING CENTER

*Hereby Presents*

**Anita Beale**

*This Certificate of Completion*

*for successfully completing the Microsoft Office Specialist (MOS) Certification training in Microsoft Office 2003 Word, Excel, PowerPoint, Access, Publisher and Outlook courses.*

*Deborah Washington, Instructor*

*April 25, 2008*

*Perry School Community Service Center, Inc.*
*128 M Street NW*
*Washington, D.C. 20001*

